Elwood Electric Street Railway Company *v.* Ross.

[No. 3,067. Filed Nov. 1, 1900. Rehearing denied Feb. 15, 1901.]

Parent and Child.—*Right to Earnings.*—*Pleading.*—A complaint for negligently causing the death of a child which alleged that plaintiff was the natural father of the child, and as such would have been entitled to all her earnings during her minority, had she lived, subject to her own support and maintenance, sufficiently alleged plaintiff's right to the child's services and earnings. *pp. 261, 262.*

Same.—*Care and Custody.*—A complaint by the natural father of a child for damages on account of its death which alleges plaintiff's right to its earnings as such father is not bad for failure specifically to allege that the child was under the care, custody, and control of plaintiff. *pp. 261, 262.*

Same.—*Living with Grandparents.*—*Emancipation.*—An allegation or finding that plaintiff's little child lived with its grandparents at the time of the accident which caused its death is not equivalent to an allegation that plaintiff did not have the care and control of such child. The fact that a child lived with its grandparents, who cared for it, does not change the rule of law that a father is entitled to the custody and control of his minor child, and to its services and earnings, except where he has emancipated it. *pp. 261, 262.*

Street Railroad.—*Excessive Speed.*—*Negligence.*—Running a street car along a city street at the rate of ten miles an hour is not in itself negligence, *p. 262.*

Elwood St. R. Co. *v.* Ross.

---

NEGLIGENCE.—*Child.*—*Degree of Care.*—A child is held, so far as it is personally concerned, only to the exercise of such care and discretion as is reasonably to be expected of children of its age. *pp. 263, 264.*

SAME.—*Child.*—*Non Sui Juris.*—A child less than five years old is *non sui juris*, and, in an action against a street railway company for negligent injuries causing its death, an allegation that it was without fault or negligence contributing thereto is not necessary. *p. 264.*

STREET RAILROAD.—*Negligence.*—*Children on Street.*—Children of tender years may make reasonable and proper use of the streets on which street cars are operated, and it is the duty of a company operating such cars to take notice of the fact that children are likely to be upon the street, and to use greater care to avoid injuring them than with persons who have reached the age of discretion. *pp. 264-267.*

NEGLIGENCE.—*Killing Child.*—*Complaint.*—A complaint which alleges that a street car going at the rate of ten miles an hour in charge of a motorman, on a level, straight track, ran upon and over a child under five years of age, who was in full view of the motorman, and thereby killed her, without any effort having been made to stop the car, charges actionable negligence. *pp. 267, 268.*

STREET RAILROAD.—*Seeing Danger.*—*Stopping Car.*—A motorman who saw, or was in a situation where it was his duty to see, a child so young as to be *non sui juris*, with a sunbonnet on, running toward a point on the street car track a hundred feet in front of his car at such a rate as to reach that point at the same instant as his car, with the evident intention of crossing the track, and failed to check the car, but permitted it to run over and kill the child, was properly held guilty of actionable negligence. *pp. 267-270.*

PARENT AND CHILD.—*Giving Child Away.*—*Father's Right.*—Proof that a dying mother gave her new-born infant to her parents, and that it lived with them until nearly five years old, did not affect her husband's right to its services and earnings, nor establish emancipation of the child by him. *pp. 270, 271.*

SAME.—*Effect of Gift of Child.*—Human beings are not subjects of gifts as chattels personal, and neither a natural father or mother can give their child to another. *p. 271.*

From the Madison Superior Court. *Affirmed.*

*C. M. Greenlee* and *B. R. Call,* for appellant.

*F. W. Cady, E. B. Goodykoontz, G. M. Ballard* and *B. H. Campbell,* for appellee.

WILEY, J.—Appellee sued appellant to recover damages for the alleged negligent killing of his infant child. The complaint was in a single paragraph, to which a demurrer,

for want of facts, was addressed and overruled. The issue was joined by an answer in denial. Trial by jury, resulting in a general verdict for appellee. With the general verdict the jury found specially as to certain facts by way of answers to interrogatories. Appellant's motion for judgment on the answers to the interrogatories and for a new trial were respectively overruled. These three adverse rulings are assigned as errors, and will be considered in the order stated.

The complaint avers that appellee was the natural father of the deceased child, and that as such he would have been entitled to all her earnings from the time of her death to the time of her majority had she lived, subject to her proper care, maintenance, and support. That appellant owned and operated a street railway in the city of Elwood and ran its cars over and upon East Main street in said city; that on the 16th of October, 1896, his said infant daughter Ruth was four years, nine months and twenty-one days old, and lived with her grandparents at number 2414 East Main street in said city, with whom she had lived from her birth; that about 4 o'clock in the afternoon of said day said child was lawfully upon said street within 100 feet of her home, in plain view and calling distance of her grandmother, and was in the act of crossing said street with a playmate of her own age; that said East Main street both east and west of said house is perfectly straight for a distance of over one-half mile in both directions, so that any one on said street opposite said house can be seen for a long distance; that said child was in the act of crossing said street near her home, and that the appellant in disregard of her rights was running and operating a defectively constructed car along and over its said track on said street, going from the east toward the west; that said car was so negligently and defectively constructed that it was not equipped with any fender or other appliance to prevent a person who might be struck by said car from being thrown beneath the wheels thereof and run over, and that said car was so carelessly

and negligently constructed by reason of the absence of such fender that a person being struck thereby and felled in front of the car would necessarily be run over, unless such car was instantly stopped. That said car was being run at a great and unreasonable rate of speed, to wit, ten miles per hour, until almost upon said infant child as she was crossing the street, and until it was too late to stop the car before running upon her; that said infant child was in full view of the servant of appellant who was in charge of said car, and that it was run upon, against, and over the body of said child, and on account of the absence of any fender, as aforesaid, she was thrown beneath the car in front of the wheels, run over and instantly killed. It is also averred that the death of said child was caused without any fault or negligence of appellee, or of its grandparents, with whom she was living, and that her earnings accruing to appellee, above her care, maintenance, etc., would have been $3,000.

The first objection made to the complaint is that it does not aver that appellee had the care, control, and custody of the child, or was in any manner entitled to her services and earnings. The complaint avers that at the time of the accident resulting in the death of the child she was living with her grandparents. Such allegation does not necessarily mean that appellee did not have the care and control of her. An infant child may live with some one other than its father, and yet be under his control. The father is the natural guardian of his infant child, and is charged with its care and maintenance, and unless emancipated is entitled to its earnings. The failure specifically to charge in the complaint that the child was under the care, custody, and control of appellee does not make it bad. The suggestion that the complaint is bad because it does not aver that appellee was entitled to the services and earnings of the child does not seem to be well grounded. The complaint does aver that appellee would have been entitled to her services had she lived. As the law gives to the father the

services and earnings of his infant child, and as the complaint avers that he was its natural father, we think the complaint is sufficient in this regard.

The next objection urged to the complaint is that it fails to show actionable negligence on the part of appellant. This objection is well taken if no actionable negligence is charged, for this is the foundation of appellee's right of action. If the complaint charges negligence it rests upon two propositions: (1) An improperly constructed car, in that it was not fitted with a fender; (2) the child was in full view of the servant in charge of the car, and, considering her tender years, he ran the car at a high rate of speed, and did not check its speed when he saw her possible danger in time to avert the accident. The rate of speed at which the car was running was not in itself negligence. A street railway company, in the discharge of its duties to the traveling public, is required to run its cars at regular intervals and on time, and there are no allegations in the complaint from which we can say that the speed of the car was in itself negligence. See *Rack* v. *Chicago, etc., R. Co.,* 173 Ill. 289, 50 N. E. 668.

Passing the question as to whether it was negligence in failing to have a fender on the front end of the car while it was being run, we will consider the question of running the car in full view of the child by the servant in charge of the car at a high rate of speed, without checking its speed, etc. The discussion of this question involves the consideration of whether or not the child was *sui juris,* or *non sui juris.* The complaint is unquestionably bad for a failure to allege that the accident occurred without the fault or negligence of the child, unless we can say from the whole complaint that it was of such tender years that it could not be chargeable with discretion and care. The rule respecting contributory negligence presupposes sufficient intelligence to know the existence of danger. *Walters* v. *Chicago, etc., R. Co.,* 41 Iowa 71. The law does not fix or designate

any certain age at which children are of sufficient intelligence to have imposed upon them the full degree of care incumbent upon persons of mature age. *Houston, etc., R. Co. v. Simpson,* 60 Tex. 103. It is an ancient rule, sustained by the great weight of authority, that contributory negligence can not be imputed to a child when of such tender years that it is, by legal presumption, incapable of judgment or discretion. *Pratt, etc., Co. v. Brawley,* 83 Ala. 371, 3 South. 555; *Little Rock, etc., R. Co. v. Barker,* 33 Ark. 350; *Sioux City, etc., R. Co. v. Stout,* 17 Wall. (U. S.), 657, 21 L. Ed. 745; *Twist v. Winona, etc., R. Co.,* 39 Minn. 164, 37 Am. & Eng. R. Cas. 336, 39 N. W. 402.

Up to a certain age, the precise limit of which can not well be defined, a child is incapable of contributory negligence, and the court may so declare as a matter of law. Children ranging in age from eighteen months to six years, and even under seven, have been declared as a matter of law of being incapable of such negligence. *Chicago City R. Co. v. Wilcox,* 138 Ill. 370, 27 N. E. 899; *Walters v. Chicago City R. Co., supra; Ray v. Pennsylvania R. Co.,* 65 Pa. St. 269; *Schmidt v. Milwaukee, etc., R. Co.,* 23 Wis. 186; *Chicago, etc., R. Co. v. Ryan,* 131 Ill. 474, 23 N. E. 385; *Norfolk, etc., R. Co. v. Ormsby,* 27 Gratt. (Va.) 455; *Keyser v. Chicago, etc., R. Co.,* 56 Mich. 559, 23 N. W. 311; *Mangam v. Brooklyn R. Co.,* 38 N. Y. 455; *Erie, etc., R. Co. v. Schuster,* 113 Pa. St. 412, 6 Atl. 269; *Chicago, etc., R. Co. v. Gregory,* 58 Ill. 226; *Westerfield v. Levis,* 43 La. Ann. 63, 9 South. 52; *Buck v. People's, etc., Co.,* 46 Mo. App. 555; *Tobin v. Missouri, Pac. R. Co.* (Mo.), 18 S. W. 996; *Jeffersonville, etc., R. Co. v. Bowen,* 49 Ind. 154; *Evansville, etc., R. Co. v. Wolf,* 59 Ind. 89; *Pittsburgh, etc., R. Co. v. Vining,* 27 Ind. 513; *Indianapolis, etc., R. Co. v. Pitzer,* 109 Ind. 179; *Terre Haute, etc., R. Co. v. Tappenbeck,* 9 Ind. App. 422.

It is now the settled law that a child is held, so far as he is personally concerned, only to the exercise of such care and

discretion as is reasonably to be expected of children of his age. 1 Shearm. and Redf. on Cont. Neg. §73 ; *Terre Haute, etc., R. Co.* v. *Tappenbeck, supra; Indianapolis, etc., R. Co.* v. *Pitzer, supra.*

In *Terre Haute, etc., R. Co.* v. *Tappenbeck, supra,* it was said : "The distinction between infants who are presumed to be *non sui juris* and those who are presumed to be *sui juris* grows out of the question of capacity.   In those cases where, by reason of the tender years of the child, the courts can say, as a matter of law, that the injured child was *non sui juris,* it is not necessary in an action by the parent to either aver or prove that the child was without fault," etc.

In the case of *Citizens St. R. Co.* v. *Stoddard,* 10 Ind. App. 278, this court held that a child five years of age is *non sui juris* and incapable of contributory negligence.

From the averments of the complaint as to the age of the child, and the authorities we have cited, we are led to the conclusion that it was *non sui juris,* and hence it was not necessary to aver that it was without fault or negligence. This conclusion makes plain the duty of a street railway company in running its cars on streets where such children have a right, and where they are likely to be.   In this case the complaint does not disclose any facts or circumstances indicating that this street was a dangerous place, unless such inference necessarily arises from the fact that street cars propelled by electricity were run upon the track.   The character and extent of travel on the street is not shown ; nor does it appear how often cars passed over the track at the point where the accident occurred.

The complaint avers that the deceased child was crossing the street in full view of the appellant's servant in charge of the car.   In this connection we are reminded of the rule stated in the case of *City of Indianapolis* v. *Emmelman,* 108 Ind. 530, as follows : "Streets are open to persons of all ages, and children are and must be permitted to some

extent at least to go upon the streets of towns and cities, without incurring the imputation of negligence upon themselves or their parents."

Elliott on Roads and Streets, p. 590, says: "It is the duty of a street railway company to run its cars with a due regard to the rights of infirm persons, aged persons and children of tender years, for all classes of citizens have a right to freely use the public streets, and as this is the duty of the company, it is liable if it does not use due care to prevent injury to the various classes of persons that may lawfully use the streets." See, also, *Muncie St. R. Co.* v. *Maynard,* 5 Ind. App. 372.

It was the duty of appellant to take notice of the fact that children were likely to be on the street, and it was required to use greater care to avoid injury to them than with older persons who had reached the age of discretion. *Citizens St. R. Co.* v. *Stoddard,* 10 Ind. App. 278. See, also, *Penso* v. *McCormick,* 125 Ind. 116, 9 L. R. A. 313, 21 Am. St. 211.

It would be a harsh and unreasonable rule to hold that, because there was danger arising from operating a street railway line, children of such tender years as to be incapable of discerning the danger incident thereto should be debarred from the use of streets under any and all circumstances. Here, then, we have a child incapable of contributing to her own injury, and a street railway charged with the highest degree of care in operating its cars as respects such child. The complaint shows a straight track, with the child in plain view of the servant in charge of the car. While there is no specific charge that he saw the child, it was his duty to see it, and use all reasonable means to avoid injuring it.

In *Senn* v. *Southern R. Co.,* 108 Mo. 142, 18 S. W. 1007, it was held that reasonable care requires a driver to keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons to

use all reasonable means to avoid injuring them. See *Hyland* v. *Yonkers R. Co.,* 15 N. Y. St. 824, 48 Hun 617, 1 N. Y. Supp. 363; *Swain* v. *Fourteenth St. R. Co.,* 93 Cal. 179, 28 Pac. 829; *Anderson* v. *Minneapolis St. R. Co.,* 42 Minn. 490, 44 N. W. 518; *Baltimore, etc., R. Co.* v. *McDonnell,* 43 Md. 534; *Brooks* v. *Lincoln St. R. Co.,* 22 Neb. 816, 36 N. W. 529; *Galveston City R. Co.* v. *Hewitt,* 67 Tex. 473, 3 S. W. 705.

In this case, as in *Citizens St. R. Co.* v. *Stoddard,* 10 Ind. App. 278, the grandmother was not required to anticipate that appellant would negligently and carelessly run over the child, which she had permitted to go across the street with its playmate. The child, as we have seen, had the right to cross the street, and, as was said by Judge Black in *Noblesville Gas, etc., Co.* v. *Teter,* 1 Ind. App. 322: "One need not relinquish his valuable legal right in anticipation of an unlawful violation of it." In this connection, we must not lose sight of the rule of law that, where a person is aware of danger to another in time to avoid the impending injury by reasonable diligence, the want of such diligence on his part will amount to actionable negligence, if such negligence is the proximate cause of such injury. Under such circumstances it is the highest duty of the person who is likely to cause the injury to use all reasonable diligence to avoid it. In the case of *Lake Erie, etc., R. Co.* v. *Juday,* 19 Ind. App. 436, this rule of law was involved, and in the discussion it was said: "It has been held that though a person may have subjected himself to injury by his own negligence, yet he may recover for such injury if the person inflicting it could have avoided it after discovering his danger, or if he failed to use ordinary care." We cite that case with the authorities there collected. This rule applies with greater force where the party in danger is incapable by reason of age, or otherwise, from discerning such impending danger. Considering the age of the child, as in this case, appellant's servant had no right to assume,

as in case of an adult, that it would get off the track to avoid the approaching car, or that it would turn aside and avert the impending peril.

In the case of *Galveston, City R. Co.* v. *Hewitt,* 67 Tex. 473, 3 S. W. 708, it was said: "If a person be seen on the track of either class of railway, it may be assumed, if the person be an adult, that he will leave the track before the train or car reaches him, and this presumption may be indulged so long as danger does not become imminent, but no longer. From the time that danger is seen to be imminent, it becomes the duty of such railway company to use the highest degree of care to arrest it, and a failure to do so will constitute culpable negligence, which may or may not fix liability, as that question may be affected by the contributory negligence of the injured person. No such presumption, however, can be indulged as to the prudent conduct of an infant of no greater age than was the plaintiff at the time he is alleged to have been injured." In that case the party injured was less than four years of age.

In the case of *Artusy* v. *Missouri, etc., R. Co.,* 73 Tex. 191, 11 S. W. 177, the court said: "The fact of infancy gives warning to those in charge of a train of want of capacity and ability of the child to take care of itself, and the law therefore imposes the duty of exercising a degree of care proportionate to the helplessness of the child, who ought not to be presumed to know when to leave a track for its own safety, or to be presumed to be able to do so with that facility and promptness that an adult could and may ordinarily be trusted to do when his safety depends on his act."

The complaint having averred that the child was in full view of the appellant's servant who was in charge of the car, and it being his duty to see any person or object on the track in front of the approaching car, or approaching the track, we must assume that he saw the child in time to have stopped the car before coming into contact with it.

Under all the facts charged in the complaint, and the child's not being chargeable with contributory negligence on account of its tender years, we think the complaint stated a cause of action, and that the demurrer to it was properly overruled.

The next question to which our attention is called in argument is the overruling of appellant's motion for judgment on the answers to interrogatories. The interrogatories show that the deceased child prior and up to the time of its death was in the care and custody of its grandparents; that its mother was dead; that its father lived in Indianapolis, and its grandparents in Elwood; that appellee did not contribute to its support; that it lived with and was cared for by its grandparents, with the consent of the appellee; that appellee had not abandoned his child, and that the grandparents had not accepted the burden of maintaining it. It is further found that Main street where the grandparents lived was thinly populated; that the child was killed about half way between two public street crossings; that just prior to the time the child was killed it was given permission by its grandparents to cross the street to a neighbors to play with one of its playmates; that the car that struck the child was running about eight or ten miles per hour; that said child did not run immediately in front of the car as it was approaching toward the child; that the motorman was standing at his usual and proper place of duty; that said car was not being operated in a careful and prudent manner; that the motorman had knowledge that the child was about to cross the track; that after receiving such knowledge he had plenty of time to stop the car before coming in contact with her; that the motorman did not use all means within his power to stop the car before it struck her; that he could have stopped the car in time to have avoided striking her. These are all the facts elicited by the interrogatories that are pertinent to the question under consideration. Counsel for appellant have not advanced any

argument in support of their contention that appellant was entitled to judgment on the answers to interrogatories except that they show that appellee had abandoned his child, and hence was not entitled to its services and earnings, etc. In our judgment, the facts specially found do not show any such abandonment. The law is settled that a father is entitled to the services and earnings of his minor child, except where he has emancipated such child. The fact that the child lived with its grandparents, who cared for it, does not change this rule of law. There is nothing in the facts established by the special finding inconsistent with the general verdict, or that would justify a judgment for appellant. The motion for judgment was properly overruled.

The only remaining question for decision is the overruling of appellant's motion for a new trial. This motion is based on sixty-one reasons. The third to the thirty-sixth reasons, inclusive, allege error in admitting and refusing to admit certain evidence. We can not discuss *seriatim* all the questions thus raised. We have discharged our whole duty by a careful examination of all these questions which counsel have discussed, and after such examination we have reached the conclusion that the record as to this subject does not present any error properly saved, for which the judgment ought to be reversed. We are unable, after looking at the whole record, to find where the admission or rejection of any of the evidence saved and presented by the motion for a new trial was prejudicial to the appellant.

The first reason assigned for a new trial is that the verdict is contrary to law, and the second that the verdict is not sustained by sufficient evidence. These two reasons may properly be considered together, as they depend on the evidence. Counsel for appellant argue at great length that the evidence is wholly insufficient to support the verdict. There is evidence in the record from which the jury were authorized to find that the deceased child was seen by the motorman approaching the street car track on her way from

where she had been playing with her playmate across the street from where she lived and going toward her home. It is shown that the car was running at about ten miles per hour, and the child was walking at about the rate of two miles per hour. It is shown that the motorman first saw her when he was at least 100 feet from where she would cross the track in the direction she was going, and that she was then about twenty feet from the track. The child had on a sunbonnet, which to some extent obscured her sight, except in front of her, and which also to some extent obstructed her hearing. At the rate of speed the car was running and the child was walking, the child would reach the track at about the time the car reached the point at which she would cross. In fact this did actually occur, which resulted in the death of the child. There is evidence that the motorman called to the child, and also evidence that he did not turn off the electric current or apply the brakes until the car struck her. Considering these facts, which were properly before the jury, and the additional fact of the tender years of the child, and that she was *non sui juris,* we think the jury were authorized to impute to appellant actionable negligence, as they did by their general verdict. When the motorman saw the child approaching the track, and the distance he was from her, and the distance she was from the track, he had no right to assume she would either stop or turn aside, and it was his duty to take all necessary and reasonable steps to avoid injuring her. This he failed to do, and such failure was actionable negligence.

Another reason urged why the verdict is not sustained by sufficient evidence is, that the evidence shows that appellee emancipated his child, and therefore he was not entitled to recover for its death. Upon this point the evidence shows that the child's mother died from the effects of the birth of the child, seven days after it was born. At that time appellee lived with his wife and other members of his family in Indianapolis. The grandmother testified that before the

Elwood St. R. Co. v. Ross.

death of her daughter she gave the child to her. The grandparents did take the child to their home to care for it, etc., and this they did with the consent of appellee. The grandparents supported the child and gave it all necessary attention. Appellee continued to live in Indianapolis with his two older children, one a girl about thirteen and one a boy about seven years old, at the time of the death of appellee's wife. With these children he continued to keep house, without the aid of a housekeeper, and was so living when his child was killed. It was upon these facts that appellant relied to establish the fact that appellee had emancipated his child. Special emphasis is given to the evidence of the grandmother in which she says that her daughter gave her the child, and as appellee permitted the grandparents to take the child without objection, and care for it, it is urged that this was an abandonment of his offspring, and hence he can not maintain the action. In our judgment there is no merit in this argument. Under the facts stated, it was a natural and proper thing for the grandparents to take the child. It could not properly be cared for in appellee's own home, constituted as it was. The mother had no right to give the child to its grandmother, and such attempted gift did not carry with it the exercise of any control over or right to the child as against the rights which the law gave to appellee as its father. He could have taken the care and custody of the child at any time.

In *Citizens St. R. Co. v. Cooper*, 22 Ind. App. 459, 72 Am. St. 319, it was held that human beings are not subjects of gifts, as chattels personal, and that neither a natural father nor mother could give their child to another. We still adhere to the holding in that case. In the case before us, it is evident, under the law and the facts, that appellee was the only person who could maintain an action for the death of his child. There is evidence to support the verdict, and we can not therefore disturb the judgment on the evidence.

The thirty-seventh to the sixty-first reasons for a new trial, inclusive, allege errors of the court in giving, giving as modified, and refusing to give certain instructions. We are relieved from considering any of these instructions, for the errors, if any, are waived by a failure to discuss them. Looking at the whole record, we are of the opinion that the trial court reached the right conclusion, and our attention has not been called to any reversible error.

Judgment affirmed.